CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
2/19/2021
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| RICHARD A. DAILY, Executor of the Estate of ALICE M. WHITE, deceased,<br><br>                        *Plaintiff,*<br>v.<br><br>PAUL M. R. WHITE,<br><br>                        *Defendant.* | CASE NO. 6:20-cv-00021<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiff Richard A. Daily ("Richard"), executor of the estate of Alice M. White ("Alice"), deceased, filed a complaint against Paul M. R. White ("Paul") to recover for fourteen transactions between Alice and Paul over more than three years. Dkt. 1. Richard alleges that the transactions were loans and seeks to recover based on a breach of contract theory or, alternatively, a breach of promissory note theory.

Paul filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 4. The Court will grant Paul's motion with respect to the breach of promissory notes claim but deny his motion with respect to the breach of contract claim.

                    I.      **ALLEGED FACTUAL BACKGROUND**

For the purposes of ruling on Paul's motion to dismiss, the Court accepts as true the following allegations set forth in the complaint and attached exhibits.

Alice died on January 29, 2019. Dkt. 1 ¶ 1. Alice and her late husband, Arthur, had four biological children, including Alice W. Daily—Richard's wife—and Paul. *Id.* ¶ 7–8. Richard qualified as the executor of Alice's estate on May 1, 2019. *Id.* ¶ 2.

1

On February 2, 2009, Paul wrote Alice a letter titled "Re: Loan," in which he requested a $25,000 loan to support his business, himself, and his family. *Id.* ¶ 9; Dkt. 1-3. In part, the letter read:

> Dear Mom,
> As of this date, we request a loan. This loan is to allow the survival and enhance the success of White Technologies, Inc. and the families associated.
> We plan to pay interest at ±1% per month . . . and we expect to begin paying this, or returning principle [sic] and a few months only worth of interest soon [ . . . ].
> We expect that this loan will be short-term and hope to avoid a second amount.
> [ . . . ]
> We request a loan amount of $25,000 at this time, please. We are working to repay immediately, but a second request may be necessary . . . remaining short term & with interest. Thank you for your support.
> Paul

Dkt. 1-3. The next day, Alice issued Paul a check for $25,000. Dkt. 1 ¶ 10; Dkt. 1-4.

Between February 3, 2009 and September 27, 2012, Alice loaned Paul a total of $435,000, in fourteen separate transactions. Dkt. 1 ¶ 11. Although Alice made the first two advances—totaling $45,000—from her personal checking account, she made the twelve subsequent advances—totaling $390,000—from a line of credit that Alice opened with UBS Financial. *Id.* ¶ 14–15. Alice pledged her stock investment portfolio at UBS Financial as collateral to secure the advances from this line of credit. *Id.* ¶ 14. Alice paid UBS Financial $153,000 in interest on the advances made from the line of credit. *Id.* ¶ 16.

On October 14, 2014, Alice sent Paul a letter detailing all fourteen loans and demanding payment of the debt as he had previously agreed. *Id.* ¶ 17; Dkt. 1-5. On November 6 and 10, 2014, Alice sent Paul emails requesting that he sign and date a statement in the October 14 letter confirming his agreement to repay the debt. Dkt. 1 ¶ 18. Paul replied to Alice by email on November 11, 2014. *Id.* ¶ 19. The email read, in relevant part:

> All since the beginning of 2009, a year and a half since Dad had passed . . . when I asked for a loan to sustain what we'd begun, I have answered you as I do now . . .

> *I am certain that I will be able to pay you back, with interest! . . .* I think I have heard you in years past decline the interest . . . but, we would definitely never consider that the economics & politics of inside this market and the world to become so long and painful.
> **I repeat** . . . *I am certain that I will be able to pay you back!* And as I have said, *I don't know how long this will take but, the Company Dad and I started will flourish again and the Company and I will pay you back!*

*Id.* ¶ 19; Dkt. 1-6 (emphasis in original).

> Alice's will also references the loans to Paul:

> As of the date of this Will, I have loaned Paul Four Hundred Eighty Thousand and 00/100 Dollars ($480,000.000) (the "Second Loan") which Paul is obligated to pay to me or to my Estate upon my death. Any total remaining balance due on the Second Loan shall be allocated to and deducted from Paul's . . . share of my Residuary Estate . . . . The then outstanding balance of the Second Loan shall be determined by my Trustee in good faith on the basis of my written records, bank statements, checks or other applicable documents. The purpose of the foregoing provisions of this paragraph . . . is to effect my intention that each of my children be treated equally and that none of my other children . . . be penalized by virtue of the Second Loan made from me to Paul.

Dkt. 1 ¶ 20; Dkt. 1-1 at 4. However, Alice's estate does not have sufficient assets to account for the debt Paul owes on the loans from his share of the estate. Dkt. 1 ¶ 21. In addition, upon Alice's death, UBS Financial debited Alice's investment portfolio $330,380.57 in satisfaction of the outstanding balance on her line of credit. *Id.* ¶ 22.

The outstanding principal on Alice's loans to Paul is $435,000. *Id.* ¶ 23. At a one percent interest rate, the principal and accrued interest together amount to $1,379,956. *Id.* ¶ 24.

Richard sued Paul for breach of contract, *id.* ¶¶ 26–33, or breach of promissory notes, *id.* ¶¶ 34–43. Richard alleges that Paul's February 2, 2009 correspondence formed a written contract when Alice issued him a $25,000 check the following day. *Id.* ¶ 27. Paul's additional requests and Alice's subsequent loan advances to him supplemented the contract, which Paul acknowledged in writing in his November 11, 2014 email. *Id.* ¶ 28. Alternatively, Richard alleges that certain emails

3

that Paul sent acknowledging payments that Alice made to him were promissory notes. *Id.* ¶¶ 36–39; *see* Dkts. 1-3 ("Note 1"), 1-7 ("Note 2"), 1-8 ("Note 3"), 1-9 ("Note 4").

Note 1 is Paul's loan request letter to Alice, dated February 2, 2009. Dkt. 1-3.

Note 2 is a February 1, 2010 email from Paul to Alice with the subject line "RE: Good morning[!]" Dkt. 1-7. The email, after noting that "the investment is wise and will be paid back with interest . . . maybe even faster than I think," states:

> Loans you've made: . . .
> Feb. 2 / 09  . . . $25,000
> Apr. 16 / 09 . . . $20,000
> July 29 / 09  . . . $25,000
> . . .
> To be a "separate issue":
> Oct. 13 / 09  . . . $35,000
> **Nov. 9 / 09   . . . $33,500 Repayment with interest.**
> **Nov. 10 / 09 . . . $2,000   Additional Repayment due to Bank error.**
> **. . .**
> Dec. 21 / 09  . . . $35,000 Intending to repay from the outstanding Western Refin. Invoice of $50,000, . . . expected to be late.
> ***Current Request discussed Saturday 1/30.10 . . . $32,000.***
> ***I HAVE NOT YET COMPUTED THE INTERST*** [sic] ***THE ABOVE HAS EARNED . . . to be included.***
> **TOTAL (Including current request but, not including Interest) = $137,000.**
> In this span of a year, I will have borrowed this amount [ . . . . ]
> I fully expect to resolve this as the year develops.
> May I please contact Frank Clemente regarding the transfer we've done before?
> Thank you very, p.

*Id.* (emphasis in original).

Note 3 is a May 13, 2010 email from Paul to Alice with the subject line "RE: Wire information for May 13, 2010." Dkt. 1-8. The email, after noting that a contractor's "payment will be here by July 1," states:

> . . . and this would be the time that we'd be able to return these funds to your account with UBS.
> That figure is $24,000.00. . . . Hoping to receive this wire transfer as early as this afternoon as possible.

> Further, with this 'brief boost' . . . hoping . . . & somewhat projecting that we may not need additionals [sic] like this, nor increasing of the total loan balance to you . . . [ . . . ]
> Mom, I intend on cleaning this file up for you and applying the interest . . . .
> Thank you very much and Love, p.

*Id.*

Note 4 is an August 16, 2010 email from Paul to Alice with the subject line "RE: Wire information for May 13, 2010." Dkt. 1-9. The email states, in part, "This endeavor is very viable and will be providing a substantial return on your investment!" and, "The figure is $43,000 following some deliberation on the planning sheets." *Id.* It closes with "Love, p." *Id.*

Although Richard demanded payment on these notes, Paul refused to pay. Dkt. 1 ¶¶ 40–41; *see* Dkts. 1-10, 1-11. Richard filed this complaint on April 13, 2020. Dkt. 1.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court need not

5

"accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted). And the court cannot "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics"; instead, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Still, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.

### III.  ANALYSIS

#### A.  Breach of Contract (Count I)

##### 1.  Adequacy of Allegations

Paul argues that Richard fails to state a plausible claim for breach of contract because the factual allegations do not support a reasonable inference that Paul and Alice formed a written contract.

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009) (quoting *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004)). Paul contests only the first element in his motion to dismiss, and thus the Court will focus on whether Paul had a legally enforceable obligation to Alice—in other words, whether Paul and Alice formed a written contract.

Under Virginia law, a contract exists if "the minds of the parties . . . meet in mutual agreement on every material" term. *Belmont v. McAllister*, 116 Va. 285, 303, 81 S.E. 81, 87 (1914).

Specifically,

> [i]n order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent, and, therefore, no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode is agreed on by which it may be settled, there is no agreement, . . . .

*Dean v. Morris*, 287 Va. 531, 538, 756 S.E.2d 430, 433–34 (2014) (quoting *Smith v. Farrell*, 199 Va. 121, 128, 98 S.E.2d 3, 7 (1957) (internal citations and quotation marks omitted)).

An alleged contract with incomplete or uncertain terms is therefore unenforceable. A contract is incomplete if "one or more material terms have been entirely omitted." 287 Va. at 538, 756 S.E.2d at 433 (quoting *Smith*, 199 Va. at 128, 98 S.E.2d at 7) (internal quotation marks omitted). A contract is uncertain if it contains all "material terms, but one of them is expressed in so inexact, indefinite or obscure language that the intent of the parties cannot be sufficiently ascertained to enable the court to carry it into effect." *Id.*

Virginia courts are "reluctant to declare a contract void for indefiniteness and uncertainty" unless "the agreement provide[s] no reasonable basis for affording a remedy for its breach." *Allen v. Aetna Cas. & Sur. Co.*, 222 Va. 361, 364, 281 S.E.2d 818, 820 (1981) (citing *High Knob, Inc. v. Allen*, 205 Va. 503, 507, 138 S.E.2d 49, 53 (1964)). "This is especially true where there has been partial performance." *High Knob*, 205 Va. at 507, 138 S.E.2d at 53 (citation omitted). Thus,

> [w]hile a contract to be valid and enforceable must be so certain that each party may have an action upon it, reasonable certainty is all that is required. So where a contract is to some extent uncertain and ambiguous, it may be read in the light of surrounding circumstances, and if, reading it thus, its meaning may be gathered, the same will be enforced. But an agreement, in order to be binding, must be sufficiently definite to enable a court to give it an exact meaning, and must obligate the contracting parties to matters definitely ascertained or ascertainable.

*Dean v. Morris*, 287 Va. at 538, 756 S.E.2d at 433 (quoting *Smith*, 199 Va. at 128, 98 S.E.2d at 7) (internal quotation marks omitted). Accordingly, "[c]ontracts are not invalid merely because the

parties differ as to the construction of particular language employed by them in expressing their contract." *Manss-Owens Co. v. H.S. Owens & Son*, 129 Va. 183, 197, 105 S.E. 543, 547 (1921). A difference of opinion about how to interpret a provision does not invalidate a contract "unless the provision is of primary importance affecting the substance of the contract, and is so vague and indefinite as to make it impossible to determine its meaning, or the substantial rights of the parties thereunder." *Id.*

Here, Richard has adequately pleaded facts that raise a reasonable inference that Paul and Alice entered into a written contract that contemplated subsequent lending. In his allegations and the attached documents, Richard demonstrates that Paul's handwritten, signed letter to Alice "request[ed] a loan amount of $25,000" on which Paul promised to "pay interest at $\pm 1\%$ per month." Dkt. 1 ¶ 9; Dkt. 1-3. Alice then paid Paul the amount he requested—$25,000—by check the following day. Dkt. 1 ¶ 10; Dkt. 1-4. These facts sufficiently allege all the elements of a contract—offer, acceptance, and consideration—and that Paul and Alice's minds met with respect to the contract's material terms. *Dean*, 287 Va. at 538, 756 S.E.2d at 433–34; *Belmont*, 116 Va. at 303, 81 S.E. at 87.

The Court finds that the terms of the alleged agreement are not "so vague and indefinite as to make it impossible to determine [the contract's] meaning, or the substantial rights of the parties thereunder." *Manss-Owens Co.*, 129 Va. at 197, 105 S.E. at 547. Therefore, Paul's assertion that his loan request is too uncertain to form a contract because it lacks essential terms, including "a written promise to pay a fixed amount, the terms of the loan agreement, the repayment terms, and the obligor on the alleged loan," is unavailing. Paul cites no case law indicating which terms are in fact essential to a loan contract, much less demonstrates that any lack of information on any of those terms was a material deficit. One Virginia circuit court found that a memorandum

memorializing a loan agreement stated "with reasonable certainty the essential terms of the agreement" when it included "the lender and the borrowers, the principal amount of the loan made, and how and when the loan is to be repaid." *Faison v. Hughson*, 80 Va. Cir. 96, 2010 WL 7375613, at *3 (Roanoke City Jan. 22, 2010). Paul's loan request letter contains such terms. Indeed, the letter lists the names of the lender—Alice—and the borrower—Paul. Dkt. 1 ¶ 9; Dkt. 1-3. It also includes the principal amount of the loan—$25,000. *Id.* In addition, the letter states how the loan is to be repaid—at an interest rate of "±1% per month."[1] *Id.* And it addresses when the loan is to be repaid—that "[Paul] expect[s] to begin paying this . . . soon" and "[Paul] [is] working to repay immediately." *Id.* At any rate, "[w]here there is no agreed repayment date of an alleged obligation to repay money, . . . , it is deemed to be payable on demand." *Belcher v. Kirkwood*, 238 Va. 430, 433, 383 S.E.2d 729, 731 (1989) (citing *McComb v. McComb*, 226 Va. 271, 282, 307 S.E.2d 877, 883 (1983)). Nothing more was needed to form a contract.

Next, Paul argues that the thirteen subsequent loans similarly lack the essential terms of a loan contract and that the February 2, 2009 loan request letter does not provide for any subsequent lending. This argument fares no better. Indeed, Richard plainly alleges—and shows in the attached exhibit—that Paul's loan request letter stated that "a second request may be necessary . . . remaining short term & with interest." Dkt. 1-3. And further, Richard alleges that Alice advanced funds to Paul thirteen times pursuant to loan requests that "supplemented" his first loan request.

---

[1] Paul argues that the alleged agreement fails for want of an interest rate. In Paul's view, "±1% per month" is not sufficiently definite because "[a] minus 1% interest rate, which would be a zero percent interest rate or less, and a plus 1% rate are very different." Dkt. 5 at 4. The Court is not persuaded. Merriam-Webster defines "plus or minus," when used as an adverb, as "more or less" or "approximately." *Plus or minus*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/plus%20or%20minus (last visited Feb. 19, 2021). Thus, the interest rate term is stated "with reasonable certainty." *Dean*, 287 Va. at 538, 756 S.E.2d at 433.

Dkt. 1 ¶¶ 11, 28. These facts state a plausible claim that the parties' contract contemplated further loans under the same conditions as the first loan.

In light of all the circumstances, at this stage of the litigation, the Court cannot conclude that the alleged agreement "provide[s] no reasonable basis for affording a remedy for its breach." *Allen*, 222 Va. at 364, 281 S.E.2d at 820. Accordingly, the Court concludes that Richard has alleged a binding written contract that is "sufficiently definite to enable a court to give it an exact meaning." *Dean*, 287 Va. at 538, 756 S.E.2d at 433.

### 2. Statute of Limitations

Paul also argues that any possible claim for breach of contract is time-barred.

"[A] motion to dismiss . . . generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). A court may reach such issues only when "all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Id.* (internal quotation marks, citations, and emphasis omitted). The defendant "has the burden of proving that he is entitled to the bar of the statute of limitations." *Brown v. Harms*, 251 Va. 301, 306, 467 S.E.2d 805, 807 (1996) (citing *Lo v. Burke,* 249 Va. 311, 316, 455 S.E.2d 9, 12 (1995)).

Under Virginia law, a plaintiff must bring a breach of contract claim on a written contract signed by the party to be charged within five years after the cause of action accrues. Va. Code § 8.01-264(2). In contrast, oral contracts are subject to a three-year limitation period. Va. Code § 8.01-264(4).

A new written promise to pay, however, may restart the statute of limitations on a breach of contract claim:

> If any person against whom a right of action has accrued on any contract, other than a judgment or recognizance, promises, by writing signed by him or his agent,

> payment of money on such contract, the person to whom the right has accrued may maintain an action for the money so promised, within such number of years after such promise as it might be maintained if such promise were the original cause of action. An acknowledgement in writing, from which a promise of payment may be implied, shall be deemed to be such promise within the meaning of this subsection.

Va. Code § 8.01-229G.1; *see also Ingram v. Harris*, 174 Va. 1, 1, 5 S.E.2d 624 (1939) ("An acknowledgment or promise made before the statute of limitations has run vitalizes the old debt for another statutory period dating from the time of the acknowledgment or promise, while an acknowledgment made after the statute has run gives a new cause of action, for which the old debt is a consideration.") (interpreting prior version of Virginia Code section with same language).

In addition, the death of a plaintiff tolls the statute of limitations:

> If a person entitled to bring a personal action dies with no such action pending before the expiration of the limitation period for commencement thereof, then an action may be commenced by the decedent's personal representative before the expiration of the limitation period . . . or within one year after his qualification as personal representative, whichever occurs later.

Va. Code § 8.01-229B.1.

For loans payable on demand, the statute of limitations starts to run on the date the loan is made. *Id.* (finding that three-year statute of limitations applicable to oral contracts began to run on date transfers were made, barring claims for repayment of transfers made more than three years before suit had been filed); *see also Inv. Assocs. v. Copeland*, 262 Va. 244, 252, 546 S.E.2d 431, 436 (2001) (same) (citing *Guth v. Hamlet Assocs., Inc.*, 230 Va. 64, 72, 334 S.E.2d 558, 563–64 (1985)).

Richard alleges that Paul and Alice entered into a contract on February 3, 2009, and that Alice made the last loan pursuant to that contract on September 27, 2012. Dkt. 1 ¶ 11. Richard also alleges that Paul acknowledged his obligation to pay Alice for the loans in his November 11, 2014 email responding to Alice's requests that he sign the October 14, 2014 letter listing all fourteen

loans. Dkt. 1 ¶ 19. Paul's email stated, in part, "All since the beginning of 2009, [ . . . ] when I asked for a loan to sustain what we'd begun, I have answered you as I do now . . . *I am certain that I will be able to pay you back, with interest!*" and "**I repeat** . . . *I am certain that I will be able to pay you back!*" *Id.*; Dkt. 1-6 (emphasis in original). Finally, Richard alleges that Alice died on January 29, 2019, Dkt. 1 ¶ 1, and that Richard became executor of Alice's estate on May 1, 2019. *Id.* ¶ 2. Richard filed the complaint alleging breach of contract on April 13, 2020. *Id.*

At this stage of the litigation, the Court concludes that Paul has not met his burden of proving that the statute of limitations bars a breach of contract action.

Because Paul contends that Richard has not alleged the existence of a written contract embracing all material terms, Paul analyzes the statute of limitations issue assuming, for the sake of argument, that Richard "can allege additional essential oral terms to establish" oral contracts between Alice and Paul. Dkt. 5 at 7. A suit for breach of such oral contracts would be governed by the three-year statute of limitations and would be barred. *Id.* But as discussed above, Richard has adequately alleged that Paul and Alice formed a written contract for the loans. Paul's argument fails to grapple with, much less rebut, Richard's consistent factual allegations—and attached exhibits—describing how the parties entered into a *written* contract, not a series of oral contracts. *E.g.*, Dkt. 1 ¶¶ 9, 10, 27; Dkt. 1-3.

Paul's obligations to repay Alice's loans were payable on demand, and the statute of limitations began to run from the date of the last loan amount issued. The statute of limitations for a breach of contract action on the written contract would have expired on September 27, 2017— five years from the date of the last loan amount.

But that is not the end of the matter. Richard has further alleged that Paul's November 11, 2014 email—which referenced the loans listed in the October 14, 2014 letter and expressed Paul's

certainty that he would be able to pay Alice back—was "[a]n acknowledgement in writing, from which a promise of payment may be implied." Va. Code § 8.01-229G.1. *See also Guth*, 230 Va. at 75–76, 334 S.E.2d at 566 (finding, on motion for summary judgment, that status reports regarding loans that "were in writing, prepared in the name of the corporate defendant, but contained no express promise to pay" constituted "evidence of direct and unqualified admissions of present, subsisting debts from which promises to pay would naturally and irresistibly be implied"). Because such an acknowledgement restarts the statute of limitations for a person who has a right of action for the promised money, Paul's email extended the statute of limitations on the breach of contract claim to November 11, 2019.

Thus, when Alice died on January 29, 2019, the limitation period on her right to bring a breach of contract claim had not yet expired. Richard, as executor of Alice's estate, could bring the breach of contract action "before the expiration of the limitation period . . . or within one year after his qualification as personal representative, whichever occur[red] later." Va. Code § 8.01-229B.1. Consequently, Richard had until May 1, 2020—one year after he qualified as executor of Alice's estate—to file the breach of contract claim. Richard filed this claim based on an alleged written contract on April 13, 2020. Thus, the Court cannot conclude that Richard's claim is time-barred.

Accordingly, the Court will deny Paul's motion to dismiss the breach of contract claim (Count I).

### B. Breach of Promissory Notes (Count II)

Paul also argues that Richard fails to state a plausible claim for breach of promissory notes because the factual allegations do not support a reasonable inference that Paul issued Alice any promissory notes.

Under Virginia law, which has adopted and codified the Uniform Commercial Code ("UCC") on the issue, a "negotiable instrument" is

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it
> (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
> (2) Is payable on demand or at a definite time; and
> (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . .

Va. Code § 8.3A-104(a). A negotiable "instrument is a 'note' if it is a promise" rather than an order. Va. Code § 8.3A-104(e). A "promise" is "a written undertaking to pay money signed by the person undertaking to pay. An acknowledgment of an obligation by the obligor is not a promise unless the obligor also undertakes to pay the obligation." Va. Code § 8.3A-103(a)(9); *see also* Va. Code § 8.3A-106 (defining an unconditional promise). Comment 3 to Virginia Code § 8.3A-103 clarifies that this qualification "is intended to make it clear that an I.O.U. or other written acknowledgment of indebtedness is not a note unless there is also an undertaking to pay the obligation."

Finally, Virginia Code § 8.01-27 provides that

> [a] civil action may be maintained upon any note or writing by which there is a promise, undertaking, or obligation to pay money, if the same be signed by the party who is to be charged thereby, or his agent. The action may also be maintained on any such note or writing for any past due installment on a debt payable in installments, although other installments thereof be not due.

Here, Richard alleges that Paul made four promissory notes to Alice. Dkt. 1 ¶¶ 36–39; *see* Dkts. 1-3 ("Note 1"), 1-7 ("Note 2"), 1-8 ("Note 3"), 1-9 ("Note 4").

Viewing the allegations in the light most favorable to the plaintiff, the Court nonetheless finds that Richard has failed to state a plausible claim for breach of promissory notes. Simply put, none of the alleged letters or emails are promissory notes. Although they include references to

dollar amounts and are signed by the obligor, they do not contain "unconditional promise[s] . . . to pay a fixed amount of money." Va. Code § 8.3A-104(a). Accordingly, the documents are not "written undertaking[s] to pay money," Va. Code § 8.3A-103(a)(9), nor—even though they are addressed to the lender—are they expressly "payable to bearer" or "payable on demand or at a definite time." Va. Code § 8.3A-104(a).

At most, Notes 1 and 2 are acknowledgments of Alice's loans to Paul and Paul's obligation to repay Alice for those loans—in other words, they are I.O.U.s. But in the absence of any "undertak[ing] to pay the obligation," mere acknowledgments of indebtedness are *not* promissory notes. Va. Code § 8.3A-103(a)(9); *see also id.*, Comment 3. Richard alleges—and Paul does not dispute—that Paul has made no attempt to pay the alleged debt. Finally, Notes 3 and 4 cannot support a reasonable inference that they are acknowledgments of obligations to pay. The only dollar amounts they contain appear to be requests for wire transfers. In sum, these four writings cannot fairly be construed as promissory notes.

Because none of the documents that Richard alleges are promissory notes, the Court finds that the complaint fails to state a plausible claim for relief based on a breach of promissory note theory. Accordingly, the Court will grant Paul's motion to dismiss the breach of promissory notes claim (Count II).

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that the complaint's factual allegations state a plausible breach of contract claim but fail to state a plausible breach of promissory note claim. Accordingly, the Court will grant Paul's motion with respect to the breach of promissory notes claim (Count II) but deny his motion with respect to the breach of contract claim (Count I).

An appropriate Order will issue.

The Clerk of Court is hereby directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered this 19th day of February, 2021.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE